STATE OF NEW JERSEY, PLAINTIFF, v. GARAFOLA, ET ALS., DEFENDANTS.

Superior Court of New Jersey
Law Division Hudson County

Decided February 11, 1988.

Deputy Attorney General *Edward Neafsey* for the State of New Jersey.

Deputy Attorney General *Christopher Bubb* for the State of New Jersey.

*Michael Querques* and *Louis Esposito* for defendant Joseph Dulanie.

*Joseph Hayden* and *Richard Regan* for defendant Joseph Mocco (*Hayden, Perle & Silber,* attorneys).

*James Flynn* and *Harold Ruvoldt, Jr.* for defendant George Hurtuk (*Ruvoldt & Ruvoldt,* attorneys).

*Angelo R. Bianchi,* for defendants Richard Bassi and CMB Enterprises.

*John P. Russell* for defendant Michael Baglino.

*Joseph DiGeronimo* for defendant Joseph Lomuscio.

*Harvey Weissbard* and *Edward Wiewiorka* for defendant Patrick Ball (*Weissbard & Wiewiorka,* attorneys).

*Jeffrey Ullman* for defendant LaQuila Construction Co. (*Ullman & Holtzman,* attorneys).

*Miles Feinstein* and *Andrew Blair* for defendant Michael Harvan (*Feinstein, Bitterman & Schey,* attorneys).

*Jay Surgent* for defendant Nicholas Zimbardi (*Surgent, Passarella & King,* attorneys).

*Charles D'Amico* for defendant Arthur Dancey (*Brownstein, Booth, Barry & Diaz,* attorneys).

*Dennis Durkin* and *Joseph Drury* for defendants Cotoia Enterprises, Inc., New York Carting Company, Inc., Gun Hill Trucking, Ltd. and Paul Serra.

*Christine Yaris* for defendants Emmanuel Garafolo, Edward Garafolo and Star Container (*Gerald L. Shargel,* attorney).

*Richard M. Roberts* for defendant Edward Harvan.

*Anthony Costa* for defendant Ralph Rezza (*Rafferty & Costa,* attorneys).

HUMPHREYS, A.J.S.C.

The State of New Jersey has charged 27 persons in this indictment with a racketeering conspiracy and other crimes under the New Jersey Racketeering Statute *N.J.S.A.* 2C:41-1 *et seq.* The alleged conspiracy was to provide illegal dumping sites in New Jersey for out of state waste haulers. The State charges that the conspiracy involved bribing of New Jersey municipal officials, extortion and other crimes. The trial is estimated to take six months or longer.

The defendants have filed numerous pretrial motions. Some were assigned to another judge. The remaining motions have been retained by this court. The motions before this court were briefed and argued at great length. This opinion resolves the motions for severance and for a continuance.

Defendants have moved for a severance on a number of grounds. The State opposes severance. The position of the State is that under the New Jersey Racketeering Statute all the defendants may and ordinarily should be tried in one trial. The State's position may be sound. However, such a trial must still meet constitutional standards of fairness. The court is satisfied that a joint trial of all the defendants would be of such an inordinate length and complexity that it would violate those constitutional standards. The court therefore grants severance as follows. The defendants Mocco, Dulanie, Bassi, M. Harvan, Ball, Hurtuk and Dancy will be tried first. After that trial the court will determine the number and order of the remaining trial or trials.

The motion for a continuance is denied. The case will begin as scheduled on February 29, 1988.

## I. SEVERANCE

■ For the purpose of this decision, the court accepts the State's position that all members of a racketeering enterprise may be joined in one indictment and tried together. *See United States v. Vastola,* 670 *F.Supp.* 1244 (D.N.J.1987); *United States v. Gallo,* 668 *F.Supp.* 736 (E.D.N.Y.1987); *see also United States v. Kotteakos,* 328 *U.S.* 750, 773, 66 *S.Ct.* 1239, 1252, 90 *L.Ed.* 1557 (1946); *United States v. Russo,* 796 *F.*2d 1443 (11th Cir.1986). Nonetheless a court in order to achieve a fair trial may order "an election or separate trials of counts, grant a severance of defendants, or direct other appropriate relief." *R.*3:15–2 b.

The criteria for a severance are set forth in *State v. Scioscia,* 200 *N.J.Super.* 28, 42–43 (App.Div.1985), as follows:

"... The potential for prejudice inherent in the mere face of joinder does not of itself encompass a sufficient threat to compel a separate trial. A severance should not be granted 'merely because it would offer defendant a better chance of acquittal' ... Rather it is incumbent upon the trial judge to weigh the interests of judicial economy and efficiency against the right of every accused to have the merits of his case *fairly decided* ... 'The issue is not the respective weights of the evidence but the fairness of the trial as to each defendant.' " [Emphasis supplied]. *State v. Coruzzi,* 189 *N.J.Super.* 273, 298 (App.Div.1983) *certif. den.* 94 *N.J.* 531 (1983); *See also State v. Coleman,* 46 *N.J.* 16, 24 (1965).

■ A review of the facts in this case demonstrates that one "mega" trial would not be fair to the defendants or to the State. The indictment is 140 pages and contains 116 counts. The State at oral argument estimated that it will call some 60 witnesses, both fact witnesses and experts. The State will also offer some 175 recorded telephone conversations, a number of video tape surveillances and voluminous documentary evidence. Defendants indicated that they will challenge the admissiblity of much of the State's evidence and seek to have numerous other recorded telephone conversations introduced on the State's case. Defendants also stated that they will have extensive cross-examination. Under those circumstances the court estimates that the State will require four months or more to present its case.

The defendants indicated that they will present a lengthy defense. Moreover, defendants pointed out that the length of the trial and the large number of jury challenges will make jury selection a difficult and lengthy process. The trial itself will be punctuated with numerous delays. An adjournment may be required if only one of the 27 defendants, their counsel or a juror becomes sick. A similar jury trial in federal court in Newark has resulted in only a day or so of evidence a week. *(United States v. Accetturo,* Docket #85–CR–292 (D.N.J.)). That case is now 18 months old and the end is not in sight.

Bearing in mind all these considerations, the court concludes that the trial of this case would probably take a minimum of six to nine months and perhaps much longer. A trial of such length involving so many parties and issues would present overwhelming difficulties. A courtroom could not reasonably accommodate 27 defendants, their attorneys and associates. Constant interruptions can be anticipated when the numerous counsel assert objections, seek side bar conferences or ask to argue points of law outside the presence of the jury.

Obtaining a representative jury may be practically impossible. Hudson County is not an affluent area. Jurors in Hudson understandably object to being paid only $5 a day while being charged $7 a day for parking. In another case this court encountered great difficulty in obtaining a jury willing to serve six weeks.

A jury in Hudson able to serve for six months or more would largely be comprised of postal employees and retired persons. That jury would not be a representative cross section of the community. *See Taylor v. Louisiana,* 419 *U.S.* 522, 528, 95 *S.Ct.* 692, 696–97, 42 *L.Ed.*2d 690 (1975); *see also Lockhart v. McCree,* 476 *U.S.* 162, 106 *S.Ct.,* 1758, 1766, 1770, 90 *L.Ed.*2d 137 (1986).

Overriding all of the above is the impossibility of a jury being able to comprehend, remember, and evaluate evidence introduced over such a lengthy period of time.

In recent federal racketeering cases, Judge Brotman and Judge Weinstein comprehensively described the enormous difficulties generated by "monster" trials. Judge Brotman said:

> The court, ... recognizes the present case is complicated by the number of different types of criminal activities alleged and the number of defendants charged. It is likely that severance will lead to some redundancy in the presentation of evidence. However, there are also efficiencies associated with the severance. It will not be necessary for the non-Rico defendants who are named in a relatively small number of counts and their counsel to sit through a trial estimated to take 12 months, when the proof that concerns them could be put forward in a matter of days. The possibilities of delay caused by scheduling problems of counsel and extended cross examination in a 21 defendant trial will be somewhat reduced by the severance. The specter of managing 21 defendants and their counsel also presents difficulties to the court system in terms of providing adequate physical space. The system would be strained to provide a courtroom large enough to hold all these people and to provide rooms for consultation among counsel.
>
> The confinement of Rico charges to one trial will assist each of the several juries in compartmentalizing the evidence put before it. The court recognizes that the total time spent in court on the several trials mandated by this severance plan may equal the 12 month estimate of the 21 defendant trial. However, use of several different juries each for a shorter duration of time is an important factor in increasing the efficiencies and the ability of each jury to reach a fair result. The inevitable delays caused by illness and scheduling problems of jurors will become much more manageable in the context of shorter trials. The likelihood of obtaining a diverse cross section of the population in the selection of a jury is heightened by greater availability of jurors to serve in trials that do not interrupt employment as severely as would the estimated one year interruption in the case at bar. An exceedingly long trial mitigates against the jury's ability to devote its full attention to the trial and to properly evaluate and recollect all the evidence. Of course, in the exceptional case, a lengthy trial cannot be avoided and is in fact the best mechanism to achieve a fair trial for all parties. However, the indictment in the case at bar does not present the exceptional case. Based upon experience in presiding over jury deliberations, this court is confident the severance plan will better enable each jury to play its central role in achieving the goal of a fair trial. [*Vastola,* 670 *F.Supp.* at 1262–1263]

Judge Weinstein pointed out that: "Trials in these 'monster' cases have constituted an enormous burden on the courts, as well as on defendants, the defense bar, jurors and even prosecutors." *Gallo,* 668 *F.Supp.* at 754. Judge Weinstein persuasively described the debilitating effect of these long trials on all concerned, and the resulting impact on the constitutional right to a fair trial. As he eloquently stated, the jury's verdict

in such a trial may be based on "guilt by association—or more likely, guilt by confusion." *Id.* at 750.

The court accepts the State's contention that joint trials are to be encouraged in the interest of justice and good judicial administration. *See Richardson v. Marsh,* 481 *U.S.* 200, 107 *S.Ct.* 1702, 1708, 95 *L.Ed.*2d 176 (1987). The court agrees that defendants cannot justly complain that a joint trial should not be held because their chances of acquittal would be less. Nevertheless, the court shares Judge Weinstein's views in *United States v. Gallo* that several trials rather than one gigantic trial may well save time and expense, since the outcome of the first trial will cause a reassessment of positions and result in dismissals or pleas. 668 *F.Supp.* at 756. Furthermore the complex law and fact questions in these novel racketeering cases will largely be ironed out at the first trial. *See Gallo,* 668 *F.Supp.* at 757. Thus the later trials will be streamlined.

The court is satisfied that a joint trial of all these defendants would be a farce, which would in turn be a prelude to the tragedy of a jury speculating on, instead of judging, the guilt or innocence of 27 people charged with serious crimes.

The constitutional right to a fair criminal trial is bedrock in our system of justice. Even the guarantees of the First Amendment to the U.S. Constitution do not rise above the Sixth Amendment right to a fair trial. *See State v. Williams,* 93 *N.J.* 39, 59–63 (1983). No democratic society worthy of the name can sanction determining guilt or innocence of criminal charges in a manner which is fundamentally unfair. To prevent such fundamental unfairness, this case must be divided into two or more trials.

The State suggested several compromise proposals involving the severance of some defendants. The court is satisfied that those proposals would still result in an exceedingly lengthy and complex trial seriously impinging on the defendants constitutional right to a fair trial.

The court proposed at oral argument that the case be divided into two or more trials. The first trial will be of the three public officials, Messrs. Mocco, Dulanie and Hurtuk, and four defendants whom the State asserts are "core" defendants, namely, Messrs. M. Harvan, Bassi, Ball and Dancey.

This grouping of defendants will serve the public interest in having charges of corruption of public officials tried promptly. The State should not be seriously prejudiced by the absence of some defendants. The "core" defendants are included in the court's grouping. Furthermore, a broad range of evidence may be permissible under the RICO conspiracy count.

The case may still be long, but a trial of only seven defendants should reduce the trial time to a manageable level in terms of fairness and due process. The first trial will therefore be of those seven defendants.

## II. SIX MONTH CONTINUANCE

■ Defendants Edward Garafola, Emanuel Garafolo and Star Container seek a six months continuance on the grounds of prejudicial pretrial publicity. All defendants appear to have joined in this application. The State opposes.

Contrary to defendants' assertion, the press coverage in this case has not been unusually intensive or inflamatory. Much of the publicity took place many months ago when the defendant public officials were arrested.

Criminal cases involving environmental issues are of concern to the public in Hudson County. This court doubts, however, that those concerns are greater than the public interest in the many death penalty cases which are regularly tried in Hudson County without lengthy continuances. This is clearly not a case in which the "trial atmosphere is so corrupted by publicity that prejudice may be presumed." *See State v. Biegenwald*, 106 *N.J.* 13, 22 (1987). On the contrary, voir dire of the jury panel will probably show that the pretrial publicity in this case has largely "passed by" the public *Id.* at 36.

The crimes charged involve bribery of public officials. Determination of such charges should be made at the earliest possible opportunity. The motion for continuance is denied.

## CONCLUSION

The motions for severance are granted as set forth in this opinion. The motion for a continuance is denied. Counsel for Mocco will submit a form of order.